*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0026P (6th Cir.)
File Name:  01a0026p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JIMMIE LEE SIMPSON,
     *Petitioner-Appellant,*

     *v.*

No. 99-1677

KURT JONES, Warden,
     *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No.  97-71517—Arthur J. Tarnow, District Judge.

Argued:  September 21, 2000

Decided and Filed:  December 5, 2000[*]

Before:  BOGGS and SUHRHEINRICH, Circuit Judges;
and ALDRICH, District Judge.[**]

_____

[*] This decision was originally issued as an "unpublished decision" filed on December 5, 2000.  On January 11, 2001, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

————————————

**COUNSEL**

**ARGUED:** James Sterling Lawrence, Detroit, Michigan, for Appellant. Laura Graves Moody, ASSISTANT ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee. **ON BRIEF:** James Sterling Lawrence, Detroit, Michigan, for Appellant. Vincent J. Leone, ASSISTANT ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee. Jimmie Lee Simpson, New Haven, Michigan, pro se.

————————————

**OPINION**

————————————

BOGGS, Circuit Judge. Petitioner-appellant, Jimmie Lee Simpson, was convicted of first degree felony murder under MICH. COMP. LAWS § 750.316, on April 15, 1986. On April 28, 1986, Simpson was sentenced to life in prison without parole. Simpson now appeals a district court decision denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

I

Simpson's arrest and conviction arise from a robbery that occurred on May 21, 1985, in a two-family flat in Detroit, Michigan. Barbara Barnhill and her husband lived in the upper flat. Barnhill's 76-year-old uncle, Milton Jones, and 79-year-old wheelchair-bound aunt, Maude Jones, lived in the lower flat. Barnhill was in the lower flat visiting her aunt and uncle when the doorbell rang. When Mr. Jones answered the door, three men forcibly entered the house, pushing Mr. Jones to the floor. Barnhill described the three men in the following way: one was tall and thin; one was muscular and had a dark complexion; and one was short, had a light complexion, and was wearing a yellow jacket. Simpson was identified as the muscular man with a dark complexion. The tall, thin man

was identified as Joseph Simpson, Simpson's brother. The short man with the light complexion and wearing the yellow jacket was identified as David Kidd, a juvenile.

Barnhill testified that Joseph Simpson removed her jewelry and instructed her to lie on the couch and cover her face. Barnhill did as she was told, but looked through her fingers and observed Simpson demanding money from her aunt and uncle. Mr. Jones told Simpson that he and Mrs. Jones did not have any money. Mr. Jones attempted to get up from the floor, causing Simpson to hit Mr. Jones in the head several times, knock him down, and kick him. When Mrs. Jones attempted to help Mr. Jones, Simpson hit her, knocking her out of her wheelchair.

The three men eventually left the house and fled the scene in Barnhill's car. Barnhill and Mr. Jones were taken to the hospital where Mr. Jones died as a result of multiple blunt force injuries to the head and chest.

Barnhill testified at trial, as did Kidd, who testified pursuant to an agreement in which he pleaded guilty to second-degree murder in exchange for testifying against his accomplices. Kidd identified Simpson as one of the perpetrators of the robbery. In addition, Kidd corroborated much of Barnhill's testimony.

A jury found Simpson guilty of felony murder and unarmed robbery. Simpson was later sentenced by the trial court to life in prison without parole for the felony murder conviction and ten to fifteen years in prison for the unarmed robbery conviction.

## II

The resolution of this case involves complex issues of procedural default. Therefore, it is necessary to provide a detailed procedural history.

After his conviction and sentence, Simpson appealed to the Michigan Court of Appeals, raising four issues. Simpson

claimed that (1) his sentence of life in prison without parole violated his right to be free of cruel and unusual punishment, (2) the prosecutor's opening statement divulged the penalty for the offense charged and thus violated Simpson's right to a fair trial, (3) the prosecutor impermissibly vouched for the credibility of one of his witnesses, and (4) the prosecutor impermissibly appealed to the sympathies of the jurors. On October 27, 1988, the Michigan Court of Appeals affirmed Simpson's convictions. The Michigan Supreme Court reviewed the decision and denied relief on May 31, 1989.

Simpson filed a motion for relief from judgment with the trial court on May 8, 1990, raising four new issues. Simpson claimed that (1) he was denied effective assistance of appellate counsel when his counsel failed to raise a claim of error regarding admission of a prior offense as impeachment evidence, failed to raise a claim of error regarding the prosecutor's vouching for the credibility of a witness, and failed to argue attempts by the prosecutor to appeal to the sympathies of the jurors; (2) he was denied effective assistance of trial counsel since counsel did not impeach one of the prosecution's witnesses with the witness's prior juvenile adjudications; (3) he was denied effective assistance of trial counsel by the failure of trial counsel to argue properly issues related to Simpson's intention to testify were his prior conviction not admitted; and (4) his convictions for felony murder and unarmed robbery violated double jeopardy. On January 31, 1994, the trial court denied Simpson's motion with respect to every issue except the double jeopardy claim, for which it granted relief, setting aside Simpson's unarmed robbery conviction. Simpson did not appeal the trial court's decision.

In January 1995, Simpson filed a second motion for relief from judgment raising the following six claims: (1) the trial court applied the wrong test in deciding to allow Simpson to be impeached with a prior concealed weapons conviction; (2) Simpson was denied effective assistance of trial counsel when counsel failed to investigate Kidd's juvenile record and failed to object to prosecutorial misconduct and erroneous

was used as a description to distinguish Simpson from the other two participants in the crime and was not a racial stereotype.

## VII

When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). The district court, however, went on to address the issue of prejudice by analyzing the substance of each of Simpson's claims. We believe that the district court properly explicated the reasons why Simpson's defaulted claims lack merit. Therefore, we will not address these claims further here.

## VIII

For the foregoing reasons, the judgment of the district court is AFFIRMED and the prisoner's petition for habeas corpus is DENIED.

VI

Simpson did not procedurally default claim IVD, which alleged that Simpson was denied a fair trial and other constitutional rights by the prosecutor improperly using appeals for sympathy and racial stereotypes. As a result, we review the merits of this claim.

Simpson claims that the prosecutor inappropriately appealed for sympathy by asking the jurors to put themselves in the place of loved ones of the victims. During *voir dire*, the prosecutor mentioned that the prospective jurors would want a fair jury if a friend or relative was charged with felony murder, and they would equally want a fair jury if a friend or relative was the victim of felony murder. This was merely impressing on jurors the importance of their task, and was not improper.

During closing argument, the prosecutor stated, "Ask yourself if you had a loved one, or had a relative, or a friend, who was in a situation like that, when three . . . , " before Simpson objected. The objection was overruled, but the prosecutor did not continue or repeat the statement. In order to prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the statements of the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). In order to deny due process, the misconduct must be "'so pronounced and persistent that it permeates the entire atmosphere of the trial' or 'so gross as probably to prejudice the defendant.'" *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). The prosecutor's comments were not improper, and even if they were, they were brief and isolated, and thus did not rise to a level that would deny Simpson's right to due process.

Simpson also claims that the prosecutor inappropriately used racial stereotypes. Simpson claims that the prosecutor repeatedly and improperly called Simpson "the dark-skinned one" and encouraged Barnhill to use this description during her testimony. We agree with the district court that the phrase

jury instructions; (3) Simpson was denied a fair trial by prosecutorial misconduct, including the prosecutor vouching for the credibility of two eyewitnesses, arguing facts outside the record related to a deal given to the accomplice to testify, appealing to jurors' racial stereotypes, and arguing that defense counsel used his forensic skills to fool the jury; (4) the trial court erred by not instructing the jury that an aider and abettor must share in the intent of the principal and by invading the province of the jury by deciding Kidd's credibility; (5) the trial court improperly admonished defense counsel and denigrated counsel's cross-examination of the accomplice before the jury; and (6) the trial court erred when it found due diligence with respect to the prosecution's failure to produce a particular witness. On May 1, 1995, the trial court denied Simpson's motion on procedural grounds, noting that Simpson raised no issues that had not been previously addressed by the trial court and the Michigan Court of Appeals. In addition, the court briefly addressed and rejected Simpson's arguments on the merits. Simpson filed an application for leave to appeal to the Michigan Court of Appeals. Simpson raised the same six claims he raised in the trial court. He also contested the trial court's determinations of procedural default. On October 24, 1995, the Court of Appeals denied the application on the basis of MCR 6.508(D). Simpson then filed an application for leave to appeal to the Michigan Supreme Court based on the same issues he had raised in the Court of Appeals. This application was denied on July 26, 1996 on the basis of MCR 6.508(D).

On April 11, 1997, Simpson filed a petition for a writ of habeas corpus in federal court. This petition was based on the same issues Simpson raised to the Michigan Court of Appeals and the Michigan Supreme Court in his applications for leave to appeal the trial court's denial of his second motion for relief from judgment. Specifically, Simpson raised the following grounds:

I.    Was the lower court's decision on whether Mr. Simpson had overcome the procedural hurdles of MCR 6.508 or whether their application to the

instant case would deny due process of law to the appellant under the state and federal constitutions clearly erroneous?

II.    Was Mr. Simpson denied the right to testify at trial, the right to present a defense, and the right to due process of law when the court used the wrong test to decide whether to allow impeachment of the defendant by a weapons conviction?

III.   Was Appellant denied the effective assistance of counsel in the following ways:
   A.   Counsel failed to investigate the juvenile record of David Kidd and use it to attack his credibility;
   B.   Counsel failed to object to prosecutorial misconduct; and
   C.   Counsel failed to object to the erroneous aiding and abetting instruction and felony-murder instruction?

IV.    Was Mr. Simpson denied due process of law by the following actions of the prosecutor:
   A.   The prosecutor vouched for the truthfulness of his case and the credibility of his witnesses;
   B.   The prosecutor argued facts outside the record to dilute the effect of the deal given to the accomplice and he also testified to vouch for Mrs. Barnhill's credibility;
   C.   The prosecutor purposely misstated the law on the burden of proof;
   D.   The prosecutor used appeals for sympathy and used racial stereotypes and other fear tactics in order to obtain a conviction; and
   E.   The prosecutor diluted the presumption of innocence by arguing that defense counsel used his forensic skills to fool the jury?

Simpson did not object to the prosecutor's comments at trial. As a result, the Court of Appeals ruled that appellate review of the issue was precluded by procedural default. Since Simpson did not present this claim to the state courts in accordance with state procedural rules and the last state court rendering a judgment on the claim based its decision on an adequate and independent state procedural rule, the district court properly ruled that this claim was precluded from habeas review. *See Coe*, 161 F.3d at 329.

Simpson claims that the procedural default rule should not apply for two reasons. First, Simpson argues that since the Court of Appeals applied the procedural rule but went on to address the merits of Simpson's argument related to prosecutorial misconduct, the issue is not precluded from habeas review according to *Harris*, 489 U.S. at 263. However, *Harris* only applies when a court mentions a state procedural default but bases its decision primarily on federal substantive law or on a holding that is interwoven with federal substantive law. *See Coleman*, 501 U.S. at 740. The Michigan Court of Appeals issued an alternative holding rejecting Simpson's claims both on procedural and substantive grounds. An alternative holding in which a state procedural bar is a sufficient basis for the state court's judgment is adequate to preclude a claim from being raised on habeas review, even when the state court also relies on federal law. *See Coe*, 161 F.3d at 330 (citing *Harris*, 489 U.S. at 264 n.10). Second, Simpson claims that the failure to object rule is not strictly and regularly followed by Michigan courts. This court, however, in rejecting a claim of prosecutorial misconduct, has ruled that the failure to object rule is regularly followed in Michigan. *See Draper v. Adams*, No. 98-1616, 2000 WL 712376, at *9 (6th Cir. May 23, 2000) (unpublished table decision). Therefore, the district court properly ruled that Simpson's claim IVA was procedurally defaulted.

this court should look to the last "reasoned state judgment," claiming that the Michigan Supreme Court's judgment is not adequately explained. *See Ylst*, 501 U.S. at 803. This directive applies only when a federal court in a habeas proceeding attempts to determine "whether an unexplained order (by which we mean an order whose text or accompanying opinion does not disclose the reason for the judgment) rests primarily on federal law." *Id.* at 802. The Michigan Supreme Court's judgment is not unexplained. The court expressly stated that Simpson's claims were barred by MCR 6.508(D).

Simpson also argues that the Michigan Supreme Court's judgment cannot be relied upon because it did not address whether Simpson demonstrated cause and prejudice sufficient to overcome the procedural default. It is unclear whether Simpson is referring to the cause and prejudice exception in MCR 6.508(D)(3) or the general exception in habeas proceedings that a federal court will review a procedurally defaulted habeas claim if a prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coe*, 161 F.3d at 329. Regardless of the source upon which Simpson relies, it is the prisoner's burden to demonstrate cause and prejudice. *See Coleman*, 501 U.S. at 750; MCR 6.508(D)(3). Simpson did not meet his burden, therefore, it was not incumbent upon the Michigan Supreme Court to address Simpson's arguments regarding cause and prejudice.

V

In claim IVA, Simpson alleged that the prosecutor engaged in misconduct by vouching for the credibility of witnesses Kidd and Barnhill. This claim was procedurally defaulted because Simpson did not object to the prosecutor's remarks at trial.

Claim IVA was raised by Simpson in the direct appeal of his conviction. The Michigan Court of Appeals noted that

V.    Was Mr. Simpson denied his right to a fair trial and to trial by jury when the court did the following during jury instructions:
   A.   The trial court invaded the province of the jury when it declared that the accomplice was guilty of the crimes charged; and
   B.   The trial court erred when it instructed the jury that it could convict an aider and abettor on mere knowledge of the principal's intent?

VI.   Did the trial court's comments concerning defense counsel deny petitioner a fair trial and invade the province of the jury?

VII.  Did the trial court commit reversible error and deny Mr. Simpson his right to a fair trial and his right to a properly instructed jury when it found due diligence in the failure to produce Marcus Dawson and refused to instruct the jury on the inference to be drawn from a missing res gestae witness?

On May 24, 1999, the district court denied the petition and dismissed the application for a writ of habeas corpus. The district court rejected Simpson's claim I and dismissed Simpson's claims II, IIIA, IIIB, IIIC, IVB, IVC, IVE, VA, VB, VI, and VII as being barred by procedural default under MCR 6.508(D). The court held that Simpson's claim IVA was barred on the basis of procedural default because Simpson had not objected to these remarks at trial. The court held that Simpson's claim IVD was not barred by procedural default. The court analyzed this claim and found that it did not warrant habeas relief. Furthermore, the court analyzed each of Simpson's other substantive claims and rejected those claims as grounds for habeas relief. Simpson filed a certificate of appealability based on all of the issues he raised to the district court. The certificate was granted in full by the district court.

### III

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), since Simpson filed his habeas petition after the effective date of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Courts have differed as to their interpretation of "unreasonable application" as it appears in § 2254(d)(1). Put simply, federal courts are bound by a state court's determination of a petitioner's claims, unless the decision by the state court involved an unreasonable application of clearly established federal law. *See Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Various courts disagreed as to the standard to apply to determine whether a state court unreasonably applied clearly established federal law. In *Williams v. Taylor*, 120 S. Ct. 1495 (2000), the Supreme Court resolved this conflict. The Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Ibid.* Stated differently, "a federal habeas

### B

For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default. If a state prisoner defaults his federal claims in state court in a decision based on an independent and adequate state procedural rule, those claims cannot be reviewed in habeas proceedings. *See Coe*, 161 F.3d at 329; *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In this case, the Michigan Supreme Court, the last state court rendering a judgment in the case, based its decisions denying Simpson's application for leave to appeal the trial court's denial of his second motion for relief from judgment on Simpson's failure to comply with MCR 6.508(D). The court stated that Simpson failed to "meet the burden of establishing entitlement to relief under MCR 6.508(D)." While the judgment was brief, it was based on an independent and adequate state procedural rule. Since the Michigan Supreme Court was the last state court rendering judgment in the case, its decision denying Simpson's claims on the basis of a state procedural bar prevents federal habeas review. *See Moran v. Trippet*, No. 96-2174, 1998 WL 382698, at *2 (6th Cir. June 8, 1998) (unpublished table decision) (rejecting habeas petition on basis of procedural default where Michigan Supreme Court ruled that "defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)").

Simpson argues that the state court did not "clearly and expressly" state that its judgment was based on a state procedural rule. *See Harris v. Reed*, 489 U.S. 255, 263 (1989). This requirement only applies when a state court judgment rests primarily on federal law or is interwoven with federal law. *See Coe*, 161 F.3d at 329-30. The Michigan Supreme Court decision was based solely on the state procedural rule, however. Therefore, the "clearly and expressly" requirement does not apply. Simpson argues that

state law not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Smith v. Phillips*, 455 U.S. 209, 221 (1982).

Simpson goes on to argue that even if MCR 6.508(D) does apply, it should not bar these claims because certain exceptions apply. First, Simpson argues that MCR 6.508(D) is not strictly and regularly followed. *See Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *accord Rogers v. Howes*, 144 F.3d 990, 993-94 (6th Cir. 1998). Simpson cites only two cases in which he claims that the rule was not followed. Neither case makes a compelling argument that MCR 6.508(D) is not strictly or regularly followed. Furthermore, in reviewing claims that were procedurally defaulted for habeas purposes by noncompliance with MCR 6.508(D), we have held that MCR 6.508(D) was being regularly followed as of 1990. *See Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000); *Jones v. Toombs*, 125 F.3d 945, 947 (6th Cir. 1997). Simpson's first motion for relief from judgment was filed in 1990 and his second motion for relief from judgment was filed in 1995. *Luberda* and *Jones* indicate that MCR 6.508(D) was regularly followed at those times.

Simpson also claims the procedural bar is not applicable because he has a colorable claim of innocence. *See Schlup v. Delo*, 513 U.S. 298 (1995). The *Schlup* Court made it clear, however, that the recognition of a claim of innocence that allows a habeas court to reach the merits of a case that otherwise is procedurally defaulted is reserved for a very narrow class of cases. *Id.* at 315. Such a claim must be based on "new reliable evidence." *Id.* at 324. Simpson simply reasserts his earlier allegations supporting his claim of innocence and provides no new supporting evidence. This is not sufficient for him to overcome the procedural bar of MCR 6.508(D).

court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 1523. The Court noted that the term "unreasonable" is "no doubt difficult to define," but the Court did not expound on the word's meaning in this context, instead stating that "it is a common term in the legal world, and, accordingly, federal judges are familiar with its meaning." *Id.* at 1522.

This court has recognized that the reasonable jurist standard, which this court previously applied, is no longer good law. *See Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). Instead, this court has applied the test laid out in *Williams*, interpreting it to mean that even if this court "believe[s] that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one." *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000); *see also Butcher v. Straub*, No. 99-1308, 2000 WL 1033048, at *2-*3 (6th Cir. July 19, 2000) (unpublished table decision).

When applying the AEDPA standard, this court reviews the district court's denial of habeas corpus review de novo. *See Harris*, 212 F.3d at 942; *Herbert v. Billy*, 160 F.3d 1131, 1136 (6th Cir. 1998). This court will uphold the district court's findings of fact unless they are clearly erroneous. *See Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000).

IV

The district court ruled that Simpson's claims II, IIIA, IIIB, IIIC, IVB, IVC, IVE, VA, VB, VI, and VII, were barred by the doctrine of procedural default based on Michigan's procedural rule MCR 6.508(D).[1] A petitioner procedurally

_____

[1] MCR 6.508(D) states, in relevant part:

The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the

defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). Therefore, if a petitioner procedurally defaults a claim in state court, that procedural default carries over to federal court and precludes habeas review of that claim in federal court. In order for the doctrine to apply, however, the last state court rendering a judgment in the case must have based its judgment on the procedural default. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch*, 951 F.2d at 96. A procedural default analysis, then, is two-fold: the federal court must determine if a petitioner failed to comply with a state procedural rule; and it also must analyze whether the state court based its decision on the state procedural rule.

---

defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300.

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision.

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for the failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularity that support the claim for relief . . . .

. . . .

A

Most of Simpson's claims were presented in a way that violated MCR 6.508(D). Claims IIIA and IIIB were raised and decided against Simpson in his first motion for relief from judgment and were not directly appealed, thereby violating MCR 6.508(D)(2). Claims II, IIIC, IVB, IVC, IVE, VA, VB, VI, and VII were first raised in Simpson's second motion for relief from judgment, but could have been raised in his first motion for relief from judgment, thereby violating MCR 6.508(D)(3).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review unless the prisoner can demonstrate cause for noncompliance and actual prejudice arising from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Coe*, 161 F.3d at 329. Simpson does not assert any reasons to establish cause that would excuse his failure to appeal the partial denial of his first motion for relief from judgment or excuse his failure to present the issues raised in his second motion for relief from judgment in his first motion for relief from judgment. Nor has Simpson demonstrated actual prejudice or that a fundamental miscarriage of justice occurred in this case, since each of Simpson's substantive claims lack merit.

Simpson's only argument that MCR 6.508(D) should not apply is that issues IV, V, and VI are jurisdictional and therefore meet the exception under MCR 6.508(D)(3) for jurisdictional defects. Simpson claims that jurisdiction refers to "who has authority to do what." Petitioner's Brief, at 9. As a result, Simpson claims, issues IV, V, and VI are jurisdictional because the prosecutor and judge did not have the authority to act as witnesses. This claim lacks merit. Neither of the two cases Simpson cites defines "jurisdictional defect" as the term is used in MCR 6.508(D). Moreover, even if the Michigan courts erroneously determined the meaning of jurisdictional defect, this would be an error of