Tod FRIEDMAN, Petitioner–Appellant,

v.

David SMITH, Warden, Respondent–Appellee.

No. 02–1255.

United States Court of Appeals,
Sixth Circuit.

Dec. 5, 2003.

Mark J. Kriger, N.C. Deday LaRene, LaRene & Kriger, Detroit, MI, for Petitioner–Appellant.

Brad H. Beaver, Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before BOGGS, Chief Judge; GIBBONS, Circuit Judge; and GWIN, District Judge.*

* The Honorable James Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

GIBBONS, Circuit Judge.

Petitioner-appellant Tod Friedman was convicted of solicitation to commit murder in violation of Mich. Comp. Laws § 750.157b. Thereafter, he pled guilty to being a habitual offender, second offense. After exhausting his appeals, Friedman petitioned the United States District Court for the Eastern District of Michigan for a writ of habeas corpus. The district court denied Friedman's request but issued a certificate of appealability on two claims. Friedman's first claim is that the state court erred in failing to find that the prosecution suppressed evidence in violation of *Brady v. Maryland*, 363 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Friedman's second claim is that the penalty provision of the Michigan solicitation to commit murder statute violates equal protection because the provision does not provide sentencing guidelines, while the penalty provisions for other offenses under Michigan law do provide guidelines. For the following reasons, we affirm the district court's denial of Friedman's habeas petition.

### I.

At the time he committed the acts giving rise to his conviction for solicitation to commit murder, Friedman was serving a sentence at the Macomb Regional Facility of the Michigan Department of Corrections for committing the offense of pandering in violation of Mich. Comp. Laws § 750,455.[1] While incarcerated, Friedman met Tony Berry, who was a fellow inmate. Berry was serving time for criminal sexual assault. According to Berry, in July of 1993, Friedman asked him to kill six people involved in Friedman's pandering prosecution or to find someone else to do so. In return, Friedman offered to give Berry

a plane to ticket to Alaska and an unspecified amount of money. Berry notified the Michigan State Police of this conversation with Friedman.

Detective Mark Hazelroth led the investigation of Berry's claims. At a meeting with Berry, Hazelroth instructed Berry to keep a log of his conversations with Friedman, which Berry did thereafter. At one point, the police wired Berry with a portable tape recorder to record his conversations with Friedman. Berry was able to successfully record one such conversation. In addition to this recorded conversation, Berry also provided investigators with a list of six names given to him by Friedman. Berry understood this list to represent the people Friedman wanted him to murder. Berry's conversations with Friedman at the prison ended when Berry was released on parole on June 30, 1994.

On the basis of this and other evidence, Friedman was eventually charged with six counts of solicitation to commit murder, one for each of the six persons named in the list provided to Berry. Friedman was also charged as a third-offense habitual criminal in violation of Mich. Comp. Laws § 769.11. At Friedman's trial on these charges, Berry testified to the aforementioned facts. In addition, the recording of Berry's conversation with Friedman was also introduced into evidence. In that conversation, Friedman discussed the prospective murder of Vicki Hall, one of the six persons included on Friedman's list. Hall was the woman whose recruitment into prostitution provided the basis for Friedman's pandering conviction.

On October 21, 1994, Friedman was convicted on one count of solicitation to commit murder, specifically the murder of Vicki Hall. He was acquitted of the re-

---

**1.** Under § 750.455, the offense of pandering involves recruiting or coercing a woman to become a prostitute.

maining five counts. Friedman subsequently pled guilty to being a habitual criminal, second offense. At the sentencing hearing, Friedman argued that the penalty provision of the solicitation to commit murder statute violated his rights to equal protection because, while the penalty provisions for other offenses under Michigan law were accompanied by sentencing guidelines, that provision was not accompanied by sentencing guidelines. The trial court disagreed and, on March 29, 1995, sentenced Friedman to thirty-nine to sixty years imprisonment for his offenses.

Friedman appealed his sentence and conviction to the Michigan Court of Appeals, alleging *inter alia* that the Michigan solicitation to commit murder statute was unconstitutional because its penalty provisions did not include sentencing guidelines. While this appeal was pending, Friedman discovered a letter dated November 26, 1994, handwritten by Berry to a Port Huron, Michigan, newspaper alleging that Berry had been coerced to testify at Friedman's trial.[2] In the letter, Berry contends that at Friedman's preliminary hearing the prosecutor divulged information that could lead Friedman to link Berry to the prosecution. At the time of the hearing, Berry was on parole for his criminal sexual assault offense. Berry relates in the letter that, as a result of the prosecutor's alleged disclosure, he feared for his life. Berry claims he consequently requested that the state provide him with a change of identity, but that the state denied his request. Still fearing for his life, Berry claims he fled from Michigan and changed his identity. Eventually, however, Michigan authorities located him, arrested him for flee-

ing Michigan in violation of his parole, and returned him to Michigan. Berry was ultimately detained at the Macomb Regional Facility, where Friedman was still imprisoned. According to the letter, while at Macomb, Berry was segregated from the general population of the prison. Hazelroth eventually met with Berry at Macomb, at which time Berry stated that he no longer intended to testify at Friedman's trial. Berry claims Hazelroth threatened to return Berry to the general prison population if Berry refused to testify. Since Friedman was a member of the prison's general population, Berry perceived this statement as a threat of harm at the hands of Friedman. Berry eventually agreed to testify.

On October 31, 1997, after the conclusion of his direct appeals,[3] Friedman petitioned the trial court for relief from its judgment and either a new trial or resentencing on the grounds that the newly discovered letter constituted exculpatory evidence under *Brady v. Maryland,* 363 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial court summarily denied Friedman's request on December 18, 1997. Friedman filed a motion with the trial court for reconsideration of this decision, which was denied on November 18, 1998, because the court found that the suppressed evidence did not undermine confidence in the outcome of Friedman's trial. The Michigan Court of Appeals denied Friedman leave to appeal this decision on the basis that his claim lacked merit. The Michigan Supreme Court, in turn, denied Friedman leave to appeal the Michigan Court of Appeals decision on the ground

---

**2.** Friedman acquired this letter as a result of a request for Berry's parole file under Michigan's Freedom of Information Act. Friedman does not identify precisely when he discovered the letter, only that it was while his direct appeal was pending before the Michigan Court of Appeals.

**3.** The Michigan Court of Appeals affirmed Friedman's conviction and sentence on October 8, 1996, and, on July, 25, 1997, the Michigan Supreme Court denied Friedman's request for leave to appeal that decision.

that "defendant has failed to meet the burden of establishing entitlement to relief under [Mich. Ct. R.] 6.508(D)."

On April 25, 2000, Friedman filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 2254. Friedman asserted the following claims in his petition: (1) the trial court erred in failing to hold an evidentiary hearing on his motion for relief from judgment where new evidence revealed that the prosecution failed to disclose Berry's letter in violation of *Brady;* (2) there was insufficient evidence to support an element of solicitation to commit murder, specifically that Friedman offered or promised something of value to Berry; (3) there was insufficient evidence to support a finding that Friedman had specific intent to have a murder committed, which is another element of solicitation to commit murder; and (4) the penalty provision of the Michigan solicitation to commit murder statute violates Friedman's equal protection rights because it contains no sentencing guidelines for the offense, whereas the penalty provisions of other offenses did contain sentencing guidelines. The district court found that each of Friedman's claims was properly preserved for habeas review but denied Friedman's petition on December 26, 2001. The district court *sua sponte* also declined to issue a certificate of appealability on any of Friedman's claims on the ground that reasonable jurists would not find the court's conclusions to be debatable or wrong.

Friedman filed a notice of appeal of the district court's judgment on February 20, 2002.[4] Then, on March 12, 2002, Friedman filed a motion in the district court for a certificate of appealability on all his habeas claims. On March 22, 2002, after considering Friedman's motion, the district court vacated in part its previous order denying a certificate of appealability on all Friedman's claims and granted a certificate of appealability as to claim (1), the *Brady* claim, and claim (4), the claim that the penalty provision of the Michigan solicitation to commit murder statute is unconstitutional. Friedman thereafter requested that this court issue a certificate of appealability on his remaining claims. This court denied that request on September 4, 2002. Therefore, the only claims properly before this court are Friedman's *Brady* claim and his claim that the penalty provision of the Michigan solicitation to commit murder statute is unconstitutional.

## II.

Friedman's claims are properly before this court for review on habeas because he first raised these claims before Michigan state courts. *See* 28 U.S.C. § 2254(b); *Alley v. Bell,* 307 F.3d 380, 385 (6th Cir. 2002). The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to this case because Friedman's habeas petition was filed on April 25, 2000, well after the effective date of the Act—April 24, 1996. *See Lindh v. Murphy,* 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under 28 U.S.C. § 2254(d) of the AEDPA, a federal court may not grant habeas relief unless the adjudication in the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

4. The district court granted Friedman an extension to file a notice of appeal by February 25, 2002. Hence, Friedman's appeal was timely.

Under AEDPA, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Rather, the issue is whether the state court's decision was "contrary to" or "an unreasonable application of" clearly established federal law. A decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts materially indistinguishable from relevant Supreme Court precedent and arrives at the opposite result. *Id.* at 405, 120 S.Ct. 1495. Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable way. *Id.* at 413, 120 S.Ct. 1495.

A federal court applies a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir.1998). This court gives complete deference to the federal district court's and state court's findings of fact supported by the evidence. *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir.1994). The court otherwise reviews a district court's denial of habeas corpus review *de novo*. *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir.2000).

## A. *Brady* Claim

Friedman claims that the state courts' failure to find that the prosecution suppressed evidence in violation of *Brady* constitutes an unreasonable application of Supreme Court precedent in violation of § 2254(d).[5] The essence of Friedman's claim is that Berry's letter to the newspaper was *Brady* material that should have been divulged to Friedman by the prosecution.[6] The state counters that this court is procedurally barred from considering Friedman's *Brady* claim. The state raised this issue before the district court, which determined that Friedman's claim was not procedurally barred.[7]

A habeas petitioner procedurally defaults on a habeas claim if the petitioner does not present the claim to state courts

---

5. Before the district court, Friedman asserted in conjunction with his *Brady* claim that the state trial court erred in refusing to grant him an evidentiary hearing on that claim. The district court determined that federal law did not mandate that the state court grant Friedman such a hearing and that, to the extent Friedman was asserting the state trial court violated state law in refusing to provide him a hearing, such a state law claim was not a proper basis for federal habeas corpus relief. Friedman does not contest these determinations on appeal. He has therefore waived his claim that he was entitled to an evidentiary hearing on his *Brady* claim, and we need not address it on appeal. *See Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir.1996).

6. The letter is dated November 26, 1994, which is after Friedman's conviction on October 21, 1994, but prior to his sentencing on March 29, 1995.

7. Friedman contends that this court is precluded from considering respondent's procedural default claim because it was not raised during state court proceedings. We disagree. As other circuits have recognized, "a federal habeas court possesses the authority, in its discretion, to decide a petitioner's claim on the basis of procedural default despite the failure of the state to properly preserve procedural default as a defense." *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir.1999).

in accordance with the state's procedural rules. *Simpson,* 238 F.3d at 406. In other words, "if a petitioner procedurally defaults a claim in state court, that procedural default carries over to federal court and precludes habeas review of that claim in federal court." *Id.* Whether a petitioner's federal habeas claim is barred because petitioner procedurally defaulted on the claim in state court is a question of law reviewed *de novo. Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir.1991).

In *Maupin v. Smith,* 785 F.2d 135 (1986), this court articulated a four-part test for determining whether a defendant's claim has been procedurally defaulted in state court. *See also Lancaster v. Adams,* 324 F.3d 423, 436–38 (6th Cir.2003). According to *Maupin,* the court must first determine whether a state procedural rule is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. 785 F.2d at 138. If such a rule applies to petitioner's claim, the court must next determine whether state courts enforced the state procedural rule to bar petitioner's claim. *Id.* In assessing whether state courts enforced a procedural rule, the panel should look to the last state court that rendered a judgment on the claim at issue. *Simpson,* 238 F.3d at 406. The third prong of *Maupin* requires the court to "decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." 785 F.2d at 138. A state procedural rule is adequate if it is firmly established and regularly followed at the time it is applied. *Williams v. Coyle,* 260 F.3d 684, 693 (6th Cir.2001). A state procedural rule is an independent ground for precluding federal review of a habeas claim if the state courts actually relied on the rule to bar the claim at issue. *Id.* Finally, if a petitioner procedurally defaulted on his claim according to these standards, the petitioner must show cause

for why he did not comply with the procedural rule and demonstrate that he was actually prejudiced by the constitutional error alleged in his claim in order to salvage that claim. *Maupin,* 785 F.2d at 138. If the petitioner fails to make such a showing, the court can consider the petitioner's procedurally barred claim only if he can "demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

### 1. *Applicability of State Procedural Rule*

The first issue, then, is whether a procedural rule under Michigan law is applicable to Friedman's claim and, if so, whether Friedman failed to comply with this rule. The state argues that Mich. Ct. R. 6.508(D) applies to Friedman's *Brady* claim and that he failed to comply with its requirements. Mich. Ct. R. 6.508(D) pertains to motions for relief from judgment. *See* Mich. Ct. R. 6.501 & .502. The rule provides, in part, that a court may not grant such relief if the claimant "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence." Mich Ct. R. 6.508(D)(3). This rule is applicable to Friedman's claim, and Friedman failed to comply with the rule. Friedman alleges that he discovered Berry's letter while his direct appeal was pending before the Michigan Court of Appeals but prior to the issuance of that court's ruling on his appeal. Friedman could have raised his *Brady* claim in his direct appeal by petitioning the Court of Appeals to add the claim to his then-pending appeal. *See* Mich. Ct. R. 7.216(A)(3) (providing that "[t]he Court of Appeals may, *at any time,* in addition to its general powers, in its discretion ... permit amendment or additions to the grounds for appeal" (emphasis added)). Alternatively, Friedman could

have raised his claim before the Michigan Supreme Court in his request for leave to appeal the Court of Appeals's resolution of his direct appeal. *See* Mich. Ct. R. 7.316(A)(3) (providing that "[t]he Supreme Court may, *at any time,* in addition to its general powers ... permit the reasons or grounds of appeal to be amended or new grounds to be added" (emphasis added)). Friedman did neither. Instead, he first presented his *Brady* claim in his motion for relief from judgment. Because Friedman failed to raise his *Brady* claim on direct appeal, that claim was procedurally barred under Michigan law.

### 2. State Court Application of Procedural Rule

■ The second issue is whether the last state court to rule on Friedman's claim relied upon 6.508(D)(3) in denying his claim. To resolve this issue, the panel must determine what represents the last state court judgment on the claim and, then, whether that judgment was based on the rule. A denial of leave to appeal may constitute the last judgment on a claim.

*See Simpson,* 238 F.3d at 407. Friedman first raised his *Brady* claim in his motion for relief from the trial court judgment. The motion was summarily rejected by the trial court. Friedman reasserted the claim in a motion for reconsideration of the order rejecting his motion for relief from final judgment. The trial court considered Friedman's *Brady* claim but determined it had no merit and therefore denied Friedman's motion for reconsideration. Friedman appealed this determination to the Michigan Court of Appeals. The Court of Appeals denied Friedman leave to appeal the trial court's decision on the ground that Friedman's claims lacked merit. Friedman sought leave to appeal this decision to the Michigan Supreme Court. The Supreme Court also denied Friedman leave to appeal the decision, but on the ground that Friedman "failed to meet the burden of establishing entitlement to relief under [Mich. Ct. R.] 6.508(D)." The Supreme Court's denial of Friedman's motion for leave to appeal represents the last state court decision on Friedman's *Brady* claim.[8]

---

8. The district court determined that the Michigan Supreme Court's denial of Friedman's motion for leave to appeal was not the proper state court decision to evaluate for the purposes of determining whether Friedman procedurally defaulted on his *Brady* claim. First, the court insinuated that the Supreme Court's denial of leave to appeal should not even be considered for procedural default purposes because it is not a judgment. This insinuation was in error. The Michigan Supreme Court's denial of a petitioner's motion for leave to appeal may represent the last state court judgment on a petitioner's claim for the purposes of procedural default. *See Burroughs v. Makowski,* 282 F.3d 410, 412–14 (6th Cir.2002); *Simpson,* 238 F.3d at 407; *Gonzales v. Elo,* 233 F.3d 348, 353 (6th Cir. 2000).

Second, citing *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), the district court concluded that the denial of leave to appeal was an unexplained and un-

reasoned judgment, and that the court was therefore required to evaluate the more thoroughly reasoned lower state court judgments to determine whether Friedman procedurally defaulted on his *Brady* claim. Again, the district court erred. In *Ylst,* the Supreme Court held that "[w]here there has been one reasoned state judgment rejecting a federal claim, later *unexplained* orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803, 111 S.Ct. 2590 (emphasis added). The Court defined unexplained orders as orders "whose text or accompanying opinion does not disclose the reason for the judgment." *Id.* at 802, 111 S.Ct. 2590. The Michigan Supreme Court's order disclosed the reason for its judgment—Mich. Ct. R. 6.508(D). The judgment, therefore, was not unreasoned or unexplained. Consequently, we need not look to prior state court judgments on Friedman's *Brady* claim. *See Simpson,* 238 F.3d at 408 (distinguishing *Ylst* and stating that "[t]he Michigan Supreme

We must next determine whether the Michigan Supreme Court utilized Mich. Ct. R. 6.508(D)(3) to bar Friedman's claim. The court only referenced 6.508(D) generally as the basis for denying Friedman leave to appeal the judgment of the Michigan Court of Appeals. Friedman notes that 6.508(D) states that "[t]he defendant has the burden of establishing entitlement to the relief requested." Friedman admits that 6.508(D) goes on to list only procedural grounds for denying a defendant relief from judgment, which include 6.508(D)(3). However, Friedman claims that these procedural grounds are not the exclusive grounds for which a court may deny relief under 6.508(D). According to Friedman, a court may deny relief from judgment under 6.508(D) for the non-procedural reason that defendant simply failed to meet his burden of establishing entitlement to the relief requested. Friedman argues that the Michigan Supreme Court's citation to 6.508(D) in its order denying Friedman leave to appeal does not demonstrate that the court denied him leave to appeal on the basis of a procedural default, much less on the procedural grounds included in 6.508(D)(3).

■ We do not find Friedman's argument persuasive. This court has held on numerous occasions that 6.508(D) constitutes a procedural rule that, when invoked by a Michigan court to deny a claim, signifies that the claim is procedurally defaulted. *See Burroughs,* 282 F.3d at 413–14; *Simpson,* 238 F.3d at 405–08; *Moran v. Trippett,* No. 96–2174, 1998 WL 382698, at *2 (6th Cir. June 8, 1998). For instance, in *Burroughs,* this court explicitly held

that "the Michigan Court of Appeals and Michigan Supreme Court's statements that [petitioner] was not entitled to relief under [Mich. Ct. R.] 6.508(D) presents a sufficient explanation that their rulings were based on procedural default." 282 F.3d at 414. And, in *Simpson,* this court found that the very same language at issue in this case—defendant failed "to meet the burden of establishing entitlement to relief under [Mich. Ct. R.] 6.508(D)"—was an invocation by a state court of a procedural bar to petitioner's claim. 238 F.3d at 407. Therefore, adhering to precedent, we find that the Michigan Supreme Court's order denying Friedman leave to appeal enforced a state procedural rule to bar Friedman's *Brady* claim. This conclusion is bolstered by an additional fact. The Michigan Court of Appeals denied Friedman leave to appeal the trial court's decision based on its finding that his claims lacked merit. The Michigan Supreme Court did not, however, cite the same reason when it denied Friedman leave to appeal the Court of Appeals decision. Rather, it cited 6.508(D) as the basis of its decision. By declining to follow the Court of Appeals's rationale and instead invoking 6.508(D), the Michigan Supreme Court's order denying Friedman leave to appeal strongly suggests that the basis of that decision was procedural rather than substantive.

Friedman claims that, even if 6.508(D) constitutes a procedural rule, citing only 6.508(D) does not sufficiently demonstrate that the state procedural rule applicable to Friedman's *Brady* claim—6.508(D)(3)—

Court's judgment is not unexplained" where, in denying petitioner's motion for leave to appeal, "[t]he court expressly stated that [petitioner's] claims were barred by [Mich. Ct. R.] 6.508(D)"); *see also Burroughs,* 282 F.3d at 414 ("[T]he Michigan Court of Appeals and Michigan Supreme Court's statements that [petitioner] was not entitled to relief under

[Mich. Ct. R.] 6.508(D) presents a sufficient explanation that their rulings were based on procedural default."); *Luberda v. Trippett,* 211 F.3d 1004, 1006–08 (6th Cir.2000) (finding that Michigan Court of Appeals citation of Mich. Ct. R. 6.508(D) procedurally barred federal courts from considering a claim denied on that ground).

was actually invoked by the Michigan Supreme Court. *Burroughs* directly refutes Friedman's claim. In *Burroughs,* this court found that the Michigan Supreme Court's citation to 6.508(D) was sufficiently specific to invoke the more precise procedural bar of 6.508(D)(3). 282 F.3d at 413; *see also Moran,* 1998 WL 382698, at *2 (finding that petitioner's habeas claim was procedurally barred by 6.508(D)(3) where the Michigan Supreme Court cited only 6.508(D) in denying petitioner's leave to appeal a state court decision regarding the federal claim at issue). Friedman attempts to distinguish *Burroughs* on the basis that, in that case, the court noted it was undisputed that the petitioner failed to properly present his arguments for state appellate review, whereas in the case *subjudice* Friedman contends that he was not required to present his *Brady* claim on direct appeal. Friedman's attempt to distinguish *Burroughs* is unavailing. *Burroughs* states without qualification that the invocation of 6.508(D) by a Michigan court to deny a petitioner relief is a determination that the petitioner's claim is procedurally barred, and that invoking 6.508(D) is sufficiently specific to bar a claim under 6.508(D)(3). 282 F.3d at 413–14. At no point does the court limit its holding to instances where it is undisputed that the claims at issue were not properly presented for state appellate review. Our conclusion that the Michigan Supreme Court actually invoked 6.508(D)(3) to bar Friedman's claim is supported by the fact, which was conceded by Friedman at oral argument, that none of the other procedural bases for denying Friedman's *Brady* claim under 6.508(D) are applicable to that claim. The clear implication, then, is that—by citing 6.508(D) in its order denying Friedman leave to appeal—the Michigan Supreme Court was invoking 6.508(D)(3) specifically.

### 3. *Adequate and Independent Ground*

The third prong under *Maupin* requires determining whether 6.508(D)(3) constitutes an adequate and independent state ground for precluding federal court review of federal claims. It is clear the provision meets this criterion. As a promulgated court rule in existence at the time Friedman had the right of direct appeal,[9] 6.508(D) is certainly firmly established for our purposes. *See Luberda,* 211 F.3d at 1007–08. This court has also determined that the rule has been regularly followed since 1990, which predates Friedman's claim. *Simpson,* 238 F.3d at 407. Because the rule was firmly established and regularly followed in Friedman's case, it is an adequate state ground for precluding federal review of Friedman's *Brady* claim. And, because the Michigan Supreme Court actually relied on the rule to bar Friedman's claim, it is an independent ground for precluding federal review as well.

### 4. *Cause and Prejudice/Miscarriage of Justice*

Finally, the court must consider whether Friedman had cause for procedurally defaulting on his *Brady* claim or whether failing to consider the claim would result in a miscarriage of justice. Friedman bears the burden of persuading the court on either of these issues. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir.2001); *see also Coleman,* 501 U.S. at 750, 111 S.Ct. 2546 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscar-

9. The rule was adopted by the Michigan legis-  lature in 1989.

riage of justice."). Friedman does not meet this burden. Indeed, he does not even argue that he had cause for procedurally defaulting on his *Brady* claim, or that a miscarriage of justice would result if the panel refused to consider the claim.

In conclusion, we find that Friedman procedurally defaulted on his *Brady* claim in state court. Therefore, we need not address the merits of that claim. As we noted in *Simpson,* "[i]f a state prisoner defaults his federal claims in state court in a decision based on an independent and adequate procedural rule, those claims *cannot be reviewed in habeas proceedings.*" 238 F.3d at 407 (emphasis added).

## B. Sentencing Guidelines Claim

Friedman also appeals the district court's denial of his habeas petition on his claim that the penalty provision of Michigan's solicitation to murder statute is unconstitutional on the basis that it does not provide sentencing guidelines. Friedman contends that, if a state decides to implement sentencing guidelines in conjunction with some offenses, all similar offenses must be accompanied by sentencing guidelines as well. Otherwise, he contends, persons sentenced for offenses without sentencing guidelines will be denied equal protection of the law. Friedman presented this claim on direct appeal to the Michigan State Court of Appeals. The state court held that sentencing guidelines do not convey any substantive rights and, therefore, failing to provide guidelines for the offense of solicitation to commit murder did not violate the equal protection clause. Friedman asserts that this determination constitutes an unreasonable application of established Supreme Court precedent in violation of § 2254(d).

■ Assuming without deciding that Friedman actually has standing to present this claim, we find that Friedman is not entitled to relief on his equal protection claim because it lacks merit. The state court did not cite or address Supreme Court precedent in denying this claim. Hence, the proper inquiry is not whether the determination unreasonably applied Supreme Court precedent, but, rather, whether the state court decision is contrary to Supreme Court precedent. *See Bugh v. Mitchell,* 329 F.3d 496, 507 (6th Cir.2003). Friedman bears the burden of demonstrating that the state court decision denying him relief on his equal protection claim was in error. *Hill v. Hofbauer,* 337 F.3d 706, 712 n. 3 (6th Cir.2003). However, Friedman cites no Supreme Court case holding that, once sentencing guidelines are provided for one class of criminal offenses, equal protection mandates that guidelines be provided for all like offenses. Nor does an independent search reveal such precedent. Because the Supreme Court has not reached this conclusion, the state court's decision cannot be contrary to federal law as determined by the Supreme Court in violation of § 2254(d).

## III.

For the forgoing reasons, the judgment of the district court is affirmed, and Friedman's petition for habeas corpus is denied.