**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0385n.06

**No. 08-1353**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| GERMAIN SKINNER, | ) | |
| | ) | |
| Petitioner - Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| BARRY MCLEMORE, | ) | |
| | ) OPINION | |
| Respondent - Appellee. | ) | |
| _____ | ) | |

```
                                           FILED
                                        Jun 07, 2011
                                     LEONARD GREEN, Clerk
```

Before:    BATCHELDER, Chief Judge, and DAUGHTREY, Circuit Judge; and
           VAN TATENHOVE, District Judge.*

**VAN TATENHOVE**, District Judge. Following a jury trial, Germain Skinner was convicted of first degree criminal sexual conduct, second degree criminal conduct, and first degree home invasion. He pursued a direct appeal and post-conviction relief to no avail. Skinner then sought a writ of habeas corpus, which the district court denied on the merits. Because Skinner's claims do lack merit, we AFFIRM.

**I.**

During the early morning hours of August 6, 1998, Skinner broke into a home, sexually assaulted an eleven-year-old girl in her bedroom, and then escaped through her bedroom window.

---

*The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

The victim provided a detailed description of her assailant and later identified Skinner as the man who assaulted her. Skinner's DNA was also found on the victim's comforter.

In 2001, a Genesee County, Michigan jury convicted Skinner of first degree criminal sexual conduct (CSC-I), second degree criminal sexual conduct (CSC-II), and first degree home invasion. He was sentenced to forty to sixty years imprisonment on the CSC-I conviction, a term of fifteen to thirty years imprisonment on the CSC-II conviction, and a term of twenty to forty years imprisonment on the home invasion conviction, all to be served concurrently.

Skinner, through counsel, appealed as of right to the Michigan Court of Appeals, raising three separate claims: (1) his trial counsel was ineffective for failing to move for a mistrial; (2) the assistant prosecutor was required to disqualify himself; and (3) the prosecutor committed misconduct by denigrating defense counsel in arguments before the jury. The appellate court, finding no merit to Skinner's claims, affirmed his conviction and sentence. *See People v. Skinner*, No. 236876, 2003 WL 2271778 (Mich. Ct. App. Nov. 13, 2003) (per curiam). Proceeding *pro se*, Skinner sought leave to appeal those three issues to the Michigan Supreme Court. He also raised two issues for the first time. Skinner argued that: (1) the prosecutor violated his Fifth Amendment rights by improperly commenting on Skinner's failure to explain where he was at the time of the crime; and (2) his right to a fair trial was denied by the prosecutor's invasion of attorney-work product and false comment on that work-product. The Michigan Supreme Court denied Skinner's application for leave to appeal, stating that it was "not persuaded that the questions presented should be reviewed by this Court." *See People v. Skinner*, 470 Mich. 884, 682 N.W.2d 95 (2004).

Skinner then filed a post-conviction motion for relief from judgment. In that collateral attack, Skinner raised, among other claims, a different set of prosecutorial misconduct claims. On

February 9, 2005, the trial court denied Skinner's motion for relief from judgment. The court concluded that the claims were barred by MCR 6.508(D)(2)[1] because they had been raised and denied in his direct appeal. The Michigan Court of Appeals and the Michigan Supreme Court denied Skinner's applications for leave to appeal. Both of those denials were contained in standard orders, based on Skinner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Skinner*, 474 Mich. 1093, 711 N.W.2d 57 (2006); *People v. Skinner*, No. 262165 (Mich. Ct. App. Oct. 21, 2005).

Skinner subsequently filed a petition for a writ of habeas corpus on May 25, 2006, raising the same claims that he asserted in his post-conviction motion for relief from judgment. Adopting the recommendation of the magistrate judge, the district court denied the petition for habeas relief on the merits. The district court, however, issued a certificate of appealability as to the following claims: the prosecutor improperly argued facts not in evidence; and the prosecutor unconstitutionally referred to Skinner's failure to testify.

## II.

## A.

The Respondent did not address the merits of Skinner's claims. Instead, he argues, as he did below, that Skinner procedurally defaulted on the claims in his habeas petition because the last court to consider those issues invoked a procedural bar to deny review. Thus, according to the Respondent, federal review of Skinner's claims is barred by procedural default.

---

[1]As discussed more fully later in this opinion, the trial court's reference to MCR 6.508(D)(2) appears to be in error, at least as it relates to his current prosecutorial misconduct claims which were clearly not presented in his direct appeal.

In his reply, Skinner argues that because the Respondent did not cross-appeal from the district court, he has essentially waived his right to raise a procedural default argument. But the Respondent, having prevailed in the district court, is now the appellee. While appellants who do not raise an argument on appeal waive that argument, the same is not true for appellees. *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 n.2 (6th Cir. 2011) (citing *Leary v. Daeschner*, 228 F.3d 729, 741 n.7 (6th Cir. 2000)). This court can affirm the district court on any basis supported by the record, *see id.*, and we do not require appellees to file cross-appeals merely to argue in favor of such affirmance.

Generally, this court may not review claims that were not substantively decided by state courts because only claims adjudicated on the merits in state court proceedings are cognizable on habeas review. *See Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir. 2003). "When a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (internal quotation marks omitted). In other words, a habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc) (citations omitted).

In this case, Skinner failed to comply with a state procedural rule. He did not present his current prosecutorial misconduct claims in his appeal as of right to the Michigan Court of Appeals. Instead, he first attempted to raise these claims in his motion for leave to appeal to the Michigan

Supreme Court. Such an attempt, however, is insufficient to exhaust those claims for purposes of habeas review. The general rule in the federal habeas context is that the submission of new claims to a state's highest court on discretionary review does not constitute fair presentation of the claims to the state courts. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *see Granger v. Hurt*, 215 F. App'x 485, 491 (6th Cir. 2007) (a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals, but raises it for the first time on discretionary appeal to the state's highest court). Moreover, Skinner's failure to properly present these claims to the state appellate court on direct appeal subjected him to application of MCR 6.508(D)(3), which provides that a Michigan state court "may not grant relief to the defendant if the motion . . . alleges grounds for relief, other than jurisdictional defects, which could have been raised on [direct] appeal."[2]

We must next consider whether the state courts actually enforced the procedural rule, and we do that by looking to the last state court that rendered a judgment on the claim at issue. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). More specifically, for purposes of procedural default, the "state judgment" with which this court is concerned is "the last *explained* state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (emphasis in original) (quoting *Ylst v. Nunnemanker*, 501 U.S. 797, 803 (1991)), *cert. denied*, 544 U.S. 1002 (2005).

---

[2]Michigan Court Rule 6.508 governs motions for relief from judgment and provides that the movant "bears the burden of establishing entitlement to relief." MCR 6.508(D). The rule also sets forth three procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or post-conviction motion; and (3) where the claim could have been raised in a prior appeal or post-conviction motion but was not. *See* MCR 6.508(D)(1)-(3).

-5-

The last state court to review Skinner's claims was the Michigan Supreme Court, which considered Skinner's final appeal of his motion for relief from judgment. That court's order states, in its entirety: "On order of the Court, the application for leave to appeal the October 21, 2005 order of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Skinner*, 474 Mich. 1093. The impact of such generic references to MCR 6.508(D), rather than a specific subsection of that rule, was the subject of much debate within this circuit. *Compare Simpson*, 238 F.3d at 408 (holding that state court judgment citing only MCR 6.508(D) was "not unexplained"), *and Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002) (following *Simpson* and finding reference to MCR 6.508(D) as explained order sufficient to invoke procedural bar), *with Abela v. Martin*, 380 F.3d 915, 923 (6th Cir. 2004) (directing courts to look through generic references to MCR 6.508(D) to "the last reasoned state court judgment"), *and Alexander v. Smith*, 311 F. App'x 875, 883 (6th Cir. 2009) (per curiam) (concluding that *Abela* conflicts with the holdings in *Simpson* and *Burroughs*).

That debate, however, has been settled with our en banc opinion in *Guilmette*.[3] That decision now makes clear that "[b]rief orders citing MCR 6.508(D) are not explained orders invoking a procedural bar." *Id.* at 288. Consequently, we must look past such orders "to the last reasoned state court opinion to determine the basis for the state court's rejection" of a petitioner's claim. *Id.* at 291.

Here, both the Michigan Supreme Court and Court of Appeals denied Skinner's claims with brief orders citing only MCR 6.508(D). When we look through those unexplained orders, as *Guilmette* requires, we do not find a single ruling on the merits. Instead, the trial court here

---

[3]In fact, we delayed finalizing this opinion recognizing that the full court had agreed to take up the issue of whether orders referencing only MCR 6.508(D) were explained judgments sufficient to invoke a procedural bar.

concluded that Skinner's claims were barred by MCR 6.508(D)(2) because he had already raised them on direct appeal. Rule 6.508(D)(2) is a collateral estoppel rule which prohibits a trial court from reconsidering a claim already decided against a defendant on direct appeal. The application of such a rule typically does not bar federal habeas review. *See Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004), *cert. denied*, 544 U.S. 928 (2005); *see also Cone v. Bell*, 556 U.S. - - -, - - -, 129 S. Ct. 1769, 1781 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review."). But its invocation on these facts is erroneous.

The record establishes that Skinner failed to present his current prosecutorial misconduct claims to the Michigan Court of Appeals in his direct appeal. He first attempted to raise them in his motion for leave to appeal to the Michigan Supreme Court. Because the state supreme court declined to entertain his appeal, Skinner's claims were not properly presented to the Michigan courts. Thus, while MCR 6.508(D)(2) would apply to any claims that Skinner raised both in his direct appeal and his motion for relief from judgment, that rule simply cannot apply to his current claims.

Rule 6.508(D)(3), on the other hand, clearly applies. That rule bars consideration of claims, like Skinner's, which could have been presented on direct appeal but were not. Had the trial court instead cited MCR 6.508(D)(3), that procedural bar would preclude federal habeas review absent Skinner's demonstrating cause and prejudice. *See* MCR 6.508(D)(3)(a)-(b). Yet neither the mere availability nor the potential, or even obvious, applicability of such a rule is determinative. To operate as a bar to habeas review, such a rule must be clearly and expressly invoked. *Harris v. Reed*, 489 U.S. 255, 263 (1989) ("a procedural default does not bar consideration of a federal claim . . . unless the last state court rendering judgment in the case *clearly and expressly* states that its

judgment rests on a state procedural bar") (emphasis added); *see also Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) ("there must be unambiguous state-court reliance on a procedural default for it to block our review") (citing *Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000)). And the Michigan courts simply did not invoke that rule in denying Skinner's claims. Because the state courts did not clearly and expressly rely on a procedural bar to deny Skinner's claims, those claims are not procedurally defaulted. We must, therefore, consider the merits of Skinner's prosecutorial misconduct claims.

**B.**

The district court granted Skinner a certificate of appealability on two of his claims, both of which allege prosecutorial misconduct. Skinner contends that the prosecution made improper comments at several points during the trial. According to Skinner, the prosecutor improperly argued facts not in evidence and unconstitutionally referred to Skinner's failure to testify. These instances of misconduct, Skinner argues, violated his due process rights and entitle him to habeas relief.

**1.**

Skinner contends that the prosecutor improperly argued facts not in evidence. His challenge relates to comments the prosecutor made regarding DNA testing performed on five samples collected from stains on the victim's comforter. Prior to trial, Skinner sought to have an independent lab, Lab Corp., test Samples 2, 3, and 4, which had been collected by the police. Those samples belonged to a donor with blood type A and therefore did not match Skinner. Samples 1 and 5, however, came from a type B donor and were matched to Skinner through DNA testing performed by the State Police. The State Police did not originally provide Sample 5 to Lab Corp., and Lab Corp. did not initially test Sample 1.

The trial court approved a pretrial stipulation and ordered the State Police to provide Sample 5 to Lab Corp. In conjunction with that stipulation, defense counsel further sought to preclude the prosecutor from referencing any testing, or lack of testing, on Sample 5 during the trial. [Trial Tr., Vol. I, at 4-5.] The prosecutor responded that he had no intention of exploring this issue so long as defense counsel did not do anything "surprising" at trial. [*Id.* at 8.] And the trial court held that "[t]here should be no reference to any defense analysis of any sample five or any other sample." [*Id.* at 18.] But despite the trial court's evidentiary ruling, the prosecutor did mention the lack of testing on Sample 5 during closing argument. Explaining that Samples 2, 3, and 4 were unimportant, the prosecutor argued:

> Five and one are the ones we're saying that's his, that's the defendant's, that's the one we're saying is the defendant's DNA on there. Defense, you've got the samples, you want to independently test it, you want to challenge our beliefs that five and one's the defendant Germain Skinner, here you have, go at it. And they are given to the defense lab. Lab Corp has all five stains. But there's been no evidence presented by any lab, by anybody that five and one are different than what w[e] say it is. In fact Lab Corp produces – ah – gives no evidence of what their results of one and five are. Shhh, they're not telling. Their letter only speaks to two, three, four. Use your common sense, everyday experience. We're saying it's five and one. They have five and one independent analysis available for 'em and they're only gonna talk about two, three and four. Folks understand what I'm saying?

[Trial Tr., Vol. VI, at 224.] During his rebuttal argument, the prosecutor continued on this theme:

> Moreover, want to talk about defense talking about DNA testing. Defense said, "Well, we had one through – they acknowledge they had one through five – stains one through five available for testing. Now, if I've heard Mr. Whitesman correctly, he said, "We tested two, three and four because there were the ones we were interested in." Well, two, three and four were the ones that were not his guy, they were the kid that lived in the household . . . . But he's sa – But I heard Mr. Whitesman say it's two, three and four we're interested in, but one and five, which matched the defendant? If I understand correctly, he's not saying he's interested in testing that. One and I've [sic], we're saying matched the defendant. Here you go, independent analysis. You got a problem with it, go test it. And if I heard him saying, "We weren't interested in testing that." Now, I don't know what Lab Corp

-9-

did with samples one and five, but we do know they put no results into evidence, which means they did one or two things, either they didn't test, which defies logic, why they –

MR. WHITESMAN: I've – I have got to object, okay, I've got to object. Now, there's no evidence with regard to this – to Lab Corp test[ing] one and five. I just said – We've – We've been through that.

THE COURT: There is no evidence what was done, if anything, with respect to one and five. Now, we've been over that –

MR. BERKMAN: And I just said that.

THE COURT: – about 30 times. Okay. Thank you.

MR. BERKMAN: And that's my point. They're not putting in any evidence [on] one and five, which means one of two things. Either they didn't test one and five, which to me defies logic that we've got the samples saying it's your guy, Mr. Whitesman, if you've got a problem with our conclusions or our analysis, go test it, and they didn't test it, one possibility; or they tested one and five and they're not disclosing the results. But it's one or the other. Either you tested it or you didn't test it. Okay. You see what I'm saying? He had one and five. They matched the client. We're saying they matched the defendant. They were available for testing. And they were provided for testing and the raw material, the raw comforter was provided for the testing. And Lab Corp is silent on the results for one and five.

MR. WHITESMAN: I'm gonna object. Judge, there are no results for one and five –

THE COURT: Yes, it's correct –

MR. WHITESMAN: – 'cause one and five were not tested.

THE COURT: – Thank you. We have heard that. Now, I've – I agree with you.

[*Id.* at 316-18.]

On habeas review, "the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the conviction a denial of due process." *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quotation omitted). And we employ a two-step inquiry to evaluate

claims of prosecutorial misconduct. *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008). We first determine whether the statements were improper. *Id.* Next, we ask whether the remarks were so flagrant as to warrant reversal. *Id.* And, under that second prong, we consider four separate factors: (1) the degree to which the conduct or remarks tended to mislead the jury or prejudice the defendant; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally put before the jury; and (4) the overall strength of the evidence against the defendant. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999).

The first question is whether the prosecutor's comments were improper. According to Skinner, they were improper because the prosecutor argued facts which were not in evidence. The crux of his claim is that while there was no evidence in the record that Lab Corp. ever tested Sample 1 or 5, the prosecutor implied that the defense did analyze Samples 1 and 5 and that the results were adverse to Skinner.

We have held that "[s]tatements by a prosecutor in closing argument are not proper if they bring to the attention of the jury facts not in evidence." *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). But that is not what occurred here. The prosecutor did not explicitly argue that the defense actually tested Samples 1 and 5. Instead, he noted that the defense had access to all five stains but chose to only test Samples 2, 3, and 4 and thus had no evidence to dispute the prosecution's test results. The prosecutor specifically agreed that no test results had been produced by Lab Corp. for Samples 1 and 5. He did suggest that the jury could infer one of two things – either no testing was performed on Samples 1 and 5, or that test had been conducted and the results were adverse to Skinner. But the court, upon defense counsel's objection, immediately corrected that

statement, noting that "[t]here is no evidence what was done, if anything, with respect to one and five." [Trial Tr., Vol. VI, at 316.]

To be sure, these comments skirted the boundaries of proper argument. Yet we do not deem them improper arguments on facts not in evidence. Rather, at worst, the prosecutor may have violated the spirit, if not the letter, of the court's evidentiary ruling. Such a violation, however, is not cognizable on habeas review.[4] *See Estelle v. McGuire*, 502 U.S. 60, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Regardless, we simply cannot conclude that these statements so infected the trial with unfairness as to make Skinner's conviction a denial of due process.

**2.**

Skinner also claims that the prosecutor violated his Due Process rights by commenting on Skinner's failure to testify. Skinner points to the following statements made by the prosecutor as constitutionally impermissible:

- "He has no accounts for his whereabouts during that time in the morning. He's last s–And–And Mr. Whitesman talks about distance, he's 4.1 miles away."

[Trial Tr., Vol. VI, at 340.]

- "Okay. Within ten minutes away, definitely not halfway across Genesee County, said 4.1 miles away, this defendant, who's–ah–been outside of the house, he's been gone during this time period, he had left at 2:30, whereabouts unaccounted for, happens to match the description given by Laura Williams, who happens to pick him out of this very good lineup, who also happens to leave semen at the stain [sic] that matches

---

[4]In his habeas petition, Skinner presented a separate claim arguing that the prosecutor violated the court's evidentiary ruling. The district court disposed of that claim for the same reason that we do. *Skinner v. McLemore*, 551 F. Supp. 2d at 645. And the district court declined to issue a certificate of appealability for that issue.

him directly, DNA for DNA, his blood against the semen in the comforter, DNA to DNA, all 13 loci comparison matching him, not just in one stains [sic], but two separate stains, tested and analyzed separately."

[*Id.* at 340-341.]

- "Ladies and gentlemen, use your common sense–Oh, and that same defendant, who is out at that time, and his whereabouts unknown except for the person who saw him. That person who saw him is Laura Williams."

[*Id.* at 344.]

- "[F]or two hours [defense counsel] talked, but he never explained why a girl–an 11-year-old girl, who the defendant's a complete stranger to, she describes him to a T, who happens to have his semen on her comforter. Never heard an explanation for that because the explanation for it is that man, the defendant right there, put that semen on that comforter when he ejaculated into Laura Williams' mouth."

[*Id.* at 315.]

We do not agree with Skinner's characterization of the comments. Rather, we conclude that the prosecutor commented on the implausibility of the defense theory and lack of evidence to support it, and did not comment on Skinner's failure to testify. Because the prosecutor's comments were within the bounds of proper argument, Skinner's claim to the contrary must fail.

### III.

For the foregoing reasons, we AFFIRM the denial of Skinner's habeas petition.