NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0395n.06

No. 22-1802

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 24, 2023
DEBORAH S. HUNT, Clerk

ERIC LAMONT THOMAS,

     Petitioner-Appellant,

v.

SHERRY L. BURT, Warden,

     Respondent-Appellee.

)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Petitioner Eric Lamont Thomas, an inmate in Michigan state custody, pled no contest to a single charge of first-degree criminal sexual conduct in 2014. The trial court explained to Thomas that his plea would waive his right to appeal as of right, but it assured him that he could still ask for leave to appeal. Afterward, Thomas moved to withdraw his plea on the grounds that he did not know his plea would waive his right to appeal non-jurisdictional issues even by leave. The state courts denied his motion to withdraw the plea, his direct appeal, and his motion for relief from judgment. He then brought this habeas petition in the federal district court asserting due process violations and ineffective assistance of trial and appellate counsel related to his plea. For the reasons that follow, we AFFIRM in part and REVERSE in part the district court's order denying habeas relief.

## I.   FACTUAL BACKGROUND

The charges against Thomas arose from a home invasion and rape that occurred in 1996. In 2013, analysis of DNA evidence led prosecutors to charge Thomas and a codefendant as the perpetrators. In 2014, Thomas pled no contest to a charge of first-degree criminal sexual conduct in the Wayne County Circuit Court. All other charges were dismissed before trial as barred by the statute of limitations.

At a pretrial proceeding in September 2014, Thomas's trial counsel stated on the record that the prosecution had offered Thomas a plea deal under which he would be sentenced to eight to twenty-five years, but counsel confirmed with Thomas on the record that he was "not interested" in the plea deal. The trial court then inquired about Thomas's potential sentencing exposure, and the prosecutor answered that Thomas's sentencing guidelines range if convicted at trial would call for a sentence falling between either 96−240 months or 120−300 months. The prosecutor then stated that if Thomas were convicted at trial, he would seek a sentence near "the top end of the guidelines": a minimum term of 20 years' imprisonment with a maximum of 50 years. The court again clarified the plea offer terms, and Thomas again rejected the plea.

Thomas proceeded to trial. During jury selection, the prosecutor notified the court that Thomas's codefendant had pled guilty and asked that the codefendant be added as a witness. Defense counsel moved for a mistrial, or in the alternative to preclude the codefendant from testifying, raising concerns about the lateness of the disclosure and potential *Brady* violations. The prosecutor argued that any timeliness issues were attributable to Thomas's lawyer's late filing pursuant to Michigan's rape shield law, which the prosecutor explained had led to further investigation that culminated in the codefendant's plea. The court denied Thomas's motion and took a short recess.

When the case was recalled, defense counsel informed the court that Thomas would plead "no contest" to the charge of first-degree criminal sexual conduct. No party discussed the applicable sentencing guidelines or clarified whether Thomas's plea was subject to the earlier plea offer. Thomas and his attorney signed a plea notice form and rights waiver that included a certification that Thomas waived "the right to appeal as of right as to conviction and sentence."

The court then reviewed the rights that Thomas's no contest plea would waive. Relevant here, the court asked Thomas "Do you understand you're giving up your right to an automatic right of appeal?" Thomas responded by pausing before asking, "once this is over with [you're] saying I can't appeal this case?" The court responded, "Well, you don't have an automatic right to it, but you could ask for leave to appeal, but you don't have an automatic right to appeal." The transcript reflects that Thomas and his attorney conferred. The court then asked again, "Do you understand you're giving up your right to an automatic right of appeal?" Thomas's counsel said, "Yes."[1]

In response to questioning by the court, Thomas agreed that he was entering the plea "knowingly, intelligently, voluntarily, understandably [sic], and accurately." A month after the plea agreement, the parties returned because the court had not advised Thomas that as part of his plea, he would be subject to lifetime electronic monitoring upon release and would have to register as a sex offender. Although counsel advised Thomas that this failure would be a basis to withdraw his plea, Thomas reaffirmed the choice to plea.[2]

---

[1]Although the transcript reflects that "Mr. Evans," Thomas's attorney, spoke here, the district court reasoned that it was unclear whether this notation was a typographical error by the stenographer, a speculation that the Warden echoes on appeal. Because neither the district court nor the Warden point to any reason to believe that this notation was an error, we construe it as the transcript reflects: Thomas's attorney, and not Thomas, answered this question.

[2]On November 18, 2014, the parties again returned to court to clarify that Thomas was not subject to the lifetime monitoring requirement because the statute adding that punishment had not been enacted at the time of the offense.

The court then proceeded with sentencing. The parties agreed that the guideline range was 180 months to life, and the prosecutor requested a sentence at "the upper limits of the guidelines." Defense counsel asked for a sentence at the bottom of the guidelines, reasoning that Thomas's plea had saved the victim from having to testify. The court asked Thomas if he wanted to say anything, and Thomas responded: "Nothing. I plea[d] no contest. I just—I don't have nothing to say. I mean it's a bunch of violations in this case and I'll just, I'm going to come back on appeal." The court sentenced Thomas to a minimum of 280-months and a maximum of 700-months imprisonment.

In April 2015, Thomas filed a pro se motion to withdraw his plea, asserting that the plea was not knowing, voluntary, and intelligent because he believed at the time of his plea that he could appeal many issues, including those "related to the investigation of [his] case, [his] rights to a speedy trial, *Brady* violation, prosecutorial misconduct, sentencing, ineffective assistance of counsel, and other issues [he] believed were present in [his] case." Thomas's motion explained that he had not known nor did his attorney tell him that his plea would waive his right to appeal non-jurisdictional issues even by leave. Thomas argued that if he had known that he could not appeal those issues, he would not have pled no contest and would have insisted on going to trial.

The trial court held a hearing on Thomas's pro se motion to withdraw, and Thomas asked his newly appointed appellate counsel to argue the motion. Counsel reiterated Thomas's arguments and Thomas told the court that he "would have never took this plea if [he] would have had the right advice." The court denied the motion, finding that it was untimely and that it was frivolous because the plea transcript showed that the court informed Thomas he would lose the right to an automatic appeal but could ask for leave to appeal.

Thomas was then appointed new appellate counsel, who filed a delayed application for leave to appeal in the Michigan Court of Appeals. Before the application's filing, Thomas wrote

his new counsel multiple letters requesting that he argue for a hearing "so that trial counsel may be questioned on his failure to raise, object or challenge" various errors including (1) that trial counsel's conduct rendered the plea involuntary, and (2) that the plea "was illusory and involuntary under the totality of the circumstances." Appellate counsel ultimately raised a single claim: that the trial court abused its discretion by denying Thomas's motion to withdraw his no contest plea. The application argued both that the trial court's timeliness determination was erroneous and that the trial court erred on the merits because Thomas "had no way to know that he could not appeal, even by leave, numerous issues that he wanted to raise." The Michigan Court of Appeals summarily denied the delayed application for "lack of merit in the grounds presented."

Thomas filed a pro se application for leave to appeal in the Michigan Supreme Court, again raising the claim that the trial court abused its discretion by denying his motion to withdraw the plea and adding two claims. First, Thomas argued that he had received ineffective assistance of trial counsel, which rendered his plea involuntary. And second, he raised a claim of ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel. In June 2016, the Michigan Supreme Court denied the application in a standard form order. *See People v. Thomas*, 880 N.W.2d 553 (Mich. 2016).

In June 2017, Thomas filed a motion for relief from judgment under Michigan Court Rule (MCR) 6.500, which provides for limited post-appeal relief. The motion identified two claims. First, Thomas argued that his right to due process was violated because the plea was illusory, involuntary, and unknowing, and provided no benefit to him, making it an unenforceable unconscionable contract. Second, he argued that the plea was not knowing and intelligent because he received ineffective assistance of trial counsel when counsel failed to advise him of the consequences of waiving his right to appeal as of right.

The state trial court denied the motion in a written opinion and order. Thomas then filed a delayed application for leave to appeal that decision with the Michigan Court of Appeals, raising the same issues. The Michigan Court of Appeals denied the application, finding that Thomas had "failed to establish that the trial court erred" in denying the motion. Thomas next filed a pro se application for leave to appeal to the Michigan Supreme Court, which the Michigan Supreme Court denied on the ground that Thomas "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See People v. Thomas*, 931 N.W.2d 362 (Mich. 2019) (Table).

In September 2019, Thomas filed his current petition for habeas relief under 28 U.S.C. § 2254. As clarified by Thomas's appointed counsel below and stated by the district court, Thomas's claims for habeas relief are as follows:

1. **Due Process—Illusory Plea**: Thomas entered into a plea agreement – as embodied in the Plea Form – and the agreement violated his due process rights because it conferred no benefit on him.

2. **Due Process—Sentencing Exposure**: Thomas' plea violated his due process rights because Thomas was unaware of his sentencing exposure when he pleaded no contest.

3. **Due Process—Appellate Waiver**: Thomas did not understand that his no contest plea waived his right to an automatic appeal and his right to appeal non-jurisdictional defects that occurred before he entered his plea, and thus his plea violated due process.

4. **Ineffective Assistance of Trial Counsel—Illusory Plea**: Thomas' trial counsel provided ineffective representation when he failed to explain to Thomas that his no contest plea offered him no benefit.

5. **Ineffective Assistance of Trial Counsel—Sentencing Range**: Thomas' trial counsel provided ineffective representation when he failed to explain to Thomas the sentencing exposure that Thomas faced.

6. **Ineffective Assistance of Trial Counsel—Appeal Waiver**: Thomas' trial counsel provided deficient representation when he failed to explain to Thomas that Thomas' no contest plea prevented him from raising on appeal non-jurisdictional defects that occurred before he entered his plea.

7. **Ineffective Assistance of Appellate Counsel—Failure to Raise Due Process Challenges**: Thomas' appellate counsel provided deficient representation when he failed to raise on appeal certain due process challenges to the entry Thomas' plea.

8. **Ineffective Assistance of Appellate Counsel—Failure to Raise Ineffective Assistance of Trial Counsel**: Thomas' appellate counsel provided deficient representation when he failed to assert ineffective assistance of trial counsel in his appeal challenging the denial of Thomas' motion to withdraw his plea.

R. 31, Op. and Order Denying Habeas Relief, PageID 945–46 (numbering added and citations omitted).

Importantly, some of these claims were raised at different times in the state courts. First, Thomas raised his appellate waiver argument (as ordered above, claim 3) in the state courts as the only ground for his motion to withdraw his plea, on direct appeal in the Michigan Court of Appeals and Supreme Court, and in his MCR 6.500 petition. Thomas raised a second series of claims in his MCR 6.500 petition, even though he could have raised them on direct appeal but did not (the "Later Presented" claims): the due process illusory plea and sentencing exposure claims, and the ineffective assistance of trial counsel claims (claims 1, 2 and 4-6). Finally, Thomas raised his ineffective assistance of appellate counsel claims (claims 7 and 8) for the first time in his pro se application for leave to appeal to the Michigan Supreme Court the denial of his motion to withdraw his plea (i.e., the first chance that he had to raise them). The parties dispute, however, whether Thomas raised his ineffective assistance of appellate counsel claims in his MCR 6.500 petition.

The district court decided that Thomas had procedurally defaulted the Later Presented claims, which he presented for the first time in his MCR 6.500 petition but could have raised earlier. The court determined that those claims were procedurally defaulted because Thomas had failed to comply with MCR 6.508(D)(3), which bars relief on a claim that was not presented on direct appeal absent a showing of cause and prejudice, and the state trial court denied those claims under MCR 6.508(D)(3). The district court also held that Thomas's procedural default of these claims could not be excused by ineffective assistance of appellate counsel (IAAC), because his pro se MCR 6.500 petition failed to assert an IAAC claim either independently or as cause and

prejudice that could excuse his default. The district court likewise determined that it could not grant relief on Thomas's IAAC claims because they had not been exhausted in state court.

Finally, the court addressed the merits of Thomas's due process appellate waiver claim—which was not procedurally defaulted and was exhausted in the state courts—applying the highly deferential standard required by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. It found that Thomas failed to show that the state court's decision was contrary to or an unreasonable application of clearly established law. The district court nevertheless issued a certificate of appealability on all issues.

## II.    ANALYSIS

### A.    Later Presented Claims

The Warden argues that Thomas procedurally defaulted his Later Presented due process and ineffective assistance of trial counsel claims. As the district court identified and Thomas does not contest, Thomas raised these claims for the first time in his MCR 6.500 motion even though he could have raised them in his direct appeal.

Federal courts do not review federal constitutional claims rejected by a state court if the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment," including state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This procedural default rule applies only if: (1) there is an applicable state procedural rule with which the petitioner did not comply; (2) the state court actually enforced that procedural rule; and (3) the state procedural rule is an independent and adequate state ground to foreclose review of the federal constitutional claim. *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). The parties do not dispute that the first and third prongs of the procedural default test are met: Thomas's Later Presented claims failed to comply with MCR 6.508(D)(3), which is "an

independent and adequate state ground sufficient for procedural default" that required Thomas to raise his claims on direct appeal. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012). The question that remains is the second prong, whether the state court actually enforced MCR 6.508(D)(3) to deny Thomas's claims.

To determine whether the state court rejected a claim based on a procedural rule, we must evaluate whether the last state court rendering a judgment in the case "'clearly and expressly' state[d] that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). Notably, this plain statement rule bars consideration of a claim by a federal habeas court even if a state court reaches the merits of the federal claim "in an *alternative* holding." *Id.* at 264 n.10.

To determine whether a state court clearly and expressly invoked a state procedural bar, a federal habeas court looks to the opinion of the last state court to be presented with the federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). If that judgment is an "unexplained" order upholding a prior judgment or rejecting the same claim, a federal court "simply 'looks through' [that judgment] to the last reasoned decision." *Id.* Because the Michigan Court of Appeals and Michigan Supreme Court issued generic, unexplained denial orders of Thomas's applications for leave to appeal the denial of his Motion for Relief from Judgment, the last reasoned decision on Thomas's Later Presented claims is the state trial court's opinion denying that motion.

The Warden argues that the structure and text of the trial court's denial order confirms that it applied MCR 6.508(D)(3)'s procedural bar, while Thomas argues that the state court's decision did not clearly and expressly rely on that bar, and instead decided his claims on the merits. The state trial court's opinion denying Thomas's Motion for Relief from Judgment began by reciting the MCR 6.508(D) and MCR 6.508(D)(3) standards. In full, those provisions state:

(D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

. . .

(3) alleges grounds for relief other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief[.]

MCR 6.508(D)(3)(a)–(b).

Importantly, Rule 6.508(D) has "both a procedural and a substantive component": Our Circuit has held that Rule 6.508(D)'s introductory sentence, which requires a petitioner to establish his entitlement to relief, "applies to both the procedural and merits aspects of a petitioner's claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). MCR 6.508(D)(3), on the other hand, is a procedural component that generally precludes a defendant's claim that could have been but was not raised on direct appeal. The trial court's opinion therefore cited and quoted both the substantive and procedural components of the rule.

The court then reasoned that, "[i]n Defendant's case, this Court finds no error attributed to trial counsel, or the Court in the course of Defendant's plea and sentencing proceedings," quoting Michigan Court Rule 6.302(A)'s requirement that "[t]he court may not accept a plea of guilty or no lo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." MCR 6.302(A). The court found that the record "reveal[ed] no defect in the plea proceedings" that would require a new trial, reasoned that there was "no deviation" in the record from the requirements of Michigan's Court Rules, and described Thomas's admission of the no contest plea and responses to the court's colloquy. To conclude, the trial court denied Thomas's 6.500 motion

on the ground that it found "no cognizable claim upon which relief might be granted, pursuant to MCR 6.508(D)(3) and MCR 6.302(A)."

Despite its citation of 6.508(D)(3), therefore, the trial court's analysis rested entirely on substantive grounds. It determined that Thomas's claim failed because neither trial counsel nor the court erred during his plea and sentencing proceedings and there was no deviation from Michigan Court Rule requirements. The state court's opinion did not state that Thomas had failed to raise his claims on appeal, and it did not provide any analysis applying the MCR 6.508(D)(3) standard to the claims raised in the motion.

As our precedents considering MCR 6.508(D) have held, "neither the mere availability nor the potential, or even obvious, applicability of such a [procedural] rule is determinative." *Henderson v. Palmer*, 730 F.3d 554, 561 (6th Cir. 2013) (alteration in original) (quoting *Skinner v. McLemore*, 425 F. App'x 491, 495 (6th Cir. 2011)). Instead, "such a rule must be *clearly and expressly invoked*" to bar habeas review. *Id.* (quoting *Skinner*, 425 F. App'x at 495). To block federal habeas review, "there must be unambiguous state-court reliance on a procedural default." *Bowling v. Parker*, 344 F.3d 487, 499 (6th Cir. 2003).

Relevant here, *Dantzler v. Rewerts* held that even where an opinion "referred at the outset and at the conclusion to the standard for evaluating procedural default under MCR 6.508(D)(3)," the state court did not clearly and expressly rely on a procedural bar where its analysis "addressed only the merits of the three claims that [the petitioner] raised," and "[t]here was never an explicit statement that [the petitioner] failed to raise any particular claim on direct appeal." No. 20-1059, 2021 WL 3754248, at *8 (6th Cir. Aug. 25, 2021), *cert. denied*, 142 S. Ct. 2665 (2022).

The state court opinion that *Dantzler* examined specifically held that the defendant "ha[d] not shown 'good cause' under MCR 6.508(D)(3), nor has he proven actual prejudice." Order at 5,

*State v. Dantzler*, No. 10-003521 (Mich. 3rd Cir. Ct. Crim. Div. Mar. 4, 2015). Despite this statement finding that Danzler failed to meet MCR 6.508(D)(3)'s requirement, we reasoned that it had not clearly applied a procedural bar because the opinion rested on substantive grounds and did not apply MCR 6.508(D)(3) to bar any claim.

This case is closely analogous: the trial court cited MCR 6.508(D)(3) at the opinion's outset and the conclusion, but it addressed only the merits of Thomas's claims. The court never stated that he failed to raise any of the claims on direct appeal, let alone held that they were precluded for that reason. Significantly, the state court's opinion here lacks even the *Dantzler* state court's statement that the defendant failed to meet MCR 6.508(D)(3)'s cause and prejudice requirements, rendering the ambiguity in this case more pronounced.

The Warden suggests that the state court's citation of Rule 6.508(D)(3), without any further reasoning, clearly and expressly invoked a procedural bar. She seeks to distinguish Thomas's case from cases in which our Circuit rejected arguments that a state court relied on procedural default merely by citing to 6.508(D), or alluding to Rule 6.508(D) without citing to it, referencing *Stermer v. Warren*, 959 F.3d 704, 723–24 (6th Cir. 2020) and *Henderson v. Palmer*, 730 F.3d 554, 561–62 (6th Cir. 2013). But those cases simply provide other examples of courts enforcing the rule that the trial court's invocation of a procedural rule must be "unambiguous"—a rule that similarly applies here.

Therefore, Thomas's due process and ineffective assistance of trial counsel claims were not procedurally defaulted, and we remand to the district court for a determination on the merits of these Later Presented claims. And because Thomas sought to use his distinct ineffective assistance of appellate counsel claim only as "cause" to overcome the purported procedural default

of the Later Presented claims, and not as a standalone claim for relief, we need not consider that claim. The state court did not rely on a procedural default, so Thomas did not need to prove cause.

### B.      Appellate Waiver Claim

Next, Thomas argues that his plea was not voluntary, knowing, and intelligent, and violated due process, because he did not understand that his no contest plea would result in a waiver of his ability to appeal non-jurisdictional issues even by leave. Thomas properly exhausted this claim in the state courts—it is not procedurally defaulted. As a threshold question, the parties dispute whether the claim is subject to deference under AEDPA. AEDPA provides that a federal court may not grant a claim that was "adjudicated on the merits" in state court "unless the adjudication" "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law"; or unless it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In contrast, if the state court did not assess the merits of a claim properly raised in a habeas petition, we assess the claim de novo. *Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020).

Supreme Court precedent provides that a federal habeas court must presume that a state court adjudicated a properly presented federal claim on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). In other words, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* The presumption that a state court decided a claim on the merits can be overcome when there is reason to think some other explanation for the state court's decision is more likely. *See, e.g.*, *Ylst*, 501 U.S. at 803. But the presumption "prevails even when the state court's opinion wholly

omits discussion of the federal claim," *Smith*, 956 F.3d at 386, and it applies even "when a state-court opinion addresses some but not all of a defendant's claims," *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

Thomas's appeal focuses on the state trial court's opinion denying his Motion for Relief from Judgment, arguing that the state trial court did not adjudicate his appellate waiver claim on the merits because it misconstrued it. The district court likewise examined the state trial court's denial of Thomas's motion for relief from judgment to determine whether this claim was adjudicated on the merits. But the state trial court's opinion is not the relevant opinion for this inquiry. Unlike the procedural default analysis, a federal court seeking to determine whether a state court adjudicated a properly presented claim on the merits is not required to "look through" to the "last reasoned decision." Instead, the Supreme Court has held that the presumption of AEDPA's application applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Richter*, 562 U.S. at 98. We have applied *Richter* to hold that unexplained Michigan court orders denying leave to appeal "*based on lack of merit*" are merits adjudications entitled to AEDPA deference. *See Werth v. Bell*, 692 F.3d 486, 493–94 (6th Cir. 2012). Here, the orders of both the Michigan Court of Appeals and Michigan Supreme Court that denied Thomas leave to appeal the denial of his 6.500 motion were unexplained orders that were nevertheless based on lack of merit. Therefore, the presumption of a determination on the merits applies to those orders.

"Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. Thomas's arguments attacking the reasoning of the state *trial* court's opinion have real logical force, as the district court acknowledged. Thomas is correct

that the trial court's order focuses only on the portions of the trial record that discuss the waiver of his appeal by right, without addressing his argument that the plea was invalid because Thomas did not understand that he would be unable to appeal non-jurisdictional issues. But Thomas fails to argue or establish that there was no reasonable basis for the Michigan Court of Appeals and Michigan Supreme Court to deny him relief on appeal. Therefore, Thomas has not overcome the presumption of adjudication on the merits and AEDPA deference applies.

Under AEDPA, a federal court may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Thomas argues that the state court's decision misapplied clearly established federal law governing the waiver of constitutional rights.

A guilty plea must be voluntarily and knowingly made to satisfy due process. *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir. 1991). Whether a plea "was intelligently made depends upon the particular facts and circumstances of each case." *Id.* (citing *Johnson v. Zerbst*, 304 U.S. 458, 463 (1930)). Specifically, "[t]he defendant must at least have a 'sufficient awareness of the relevant circumstances and likely consequences.'" *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). For instance, due process requires that a defendant be aware of the maximum sentence that may be imposed, *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); that agents of the state not induce a plea through threatened physical harm or by mental coercion, *Brady*, 397 U.S. at 750; and that a plea must not be induced by threats or promises that "deprive it of the character of a voluntary act," *Machibroda v. United States*, 368 U.S. 487, 493 (1962).

When a defendant enters a guilty plea, the state has the burden to show that the plea was voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969). In an argument raised

for the first time on appeal, the Warden points to a 1993 Sixth Circuit case holding that when a petitioner challenges a plea in a later habeas proceeding, the state generally satisfies its burden by producing a transcript of the state court plea proceeding adequate to show that it is voluntary and intelligent—after which "a presumption of correctness" attaches to "[t]he factual findings of a state court that the plea was proper." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The Warden argues that, under *Garcia*, the production of the plea transcript including the colloquy for Thomas's no-contest plea shows that he knowingly waived his ability to appeal by right, and that this satisfies the state's burden to show that his plea was voluntary.

Although we have since cited *Garcia*, we have not grappled with its standard for assessing the validity of pleas following AEDPA's enactment in 1996. AEDPA provides generally that "a determination of a factual issue made by a State court shall be presumed to be correct," and requires a habeas petitioner to rebut that presumption by clear and convincing evidence, 28 U.S.C. § 2254(e)(1); moreover, AEDPA completely removed the language from 28 U.S.C. § 2254(d) that *Garcia* cited in support of its standard. *Garcia*, 991 F.3d at 327 n.1. In *Fitzpatrick v. Robinson*, 723 F.3d 624, 628 (6th Cir. 2013), we assessed the voluntariness of a plea without reference to *Garcia*, and instead asked whether the state courts unreasonably applied clearly established law. And even if *Garcia* remained good law, it would not clearly resolve this question, as the colloquy shows Thomas's obvious confusion about the extent of his appellate waiver, which undercuts the state's ability to satisfy its burden. We therefore assess this claim under the now-applicable AEDPA standard by asking whether the state court acted contrary to clearly established Supreme Court law by holding that Thomas's plea did not violate due process.

To support his claim that the state court unreasonably applied clearly established law, Thomas points to Supreme Court precedent broadly establishing that a person must comprehend

and knowingly give up a right for a waiver to be valid. In particular, he points to *Brewer v. Williams*, in which the Supreme Court determined that a defendant acted inconsistently with the suggestion that he waived his right to counsel when he continued to rely on counsel during negotiations with authorities. 430 U.S. 387, 404 (1977). Thomas presents a similar argument— that his expressions of confusion and hesitation to the court during the plea hearing were inconsistent with the argument that he knowingly waived his right to appeal.

Thomas also points to precedent requiring that a defendant have "a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. A plea may be invalid where a defendant is not informed or not correctly informed about the consequences of taking the plea. For instance, we have held that a plea is invalid as unknowing and involuntary where a defendant did not understand that the court could sentence him to more than the government's recommendation, *United States v. Jones*, 53 F.4th 414, 417 (6th Cir. 2022), and where a trial judge gave the defendant incorrect information about the time that he would serve, *Hart*, 927 F.2d at 259. Thomas makes persuasive arguments that his plea was unknowing because he too received inaccurate and confusing information about his appellate waiver. For instance, when he asked whether he could still appeal, the court never mentioned that he would completely waive appeal of all non-jurisdictional issues and simply told him that he could appeal with leave. And at a later hearing, neither counsel nor the court corrected Thomas when he again stated: "I mean it's a bunch of violations in this case and I'll just, I'm going to come back on appeal." As the district court noted, the record supports Thomas's argument that he was unaware of the extent of the appellate waiver of non-jurisdictional issues, and certainly makes clear that he was not advised about this aspect of the appellate waiver.

The difficulty here, however, is not whether Thomas's plea was unknowing or involuntary as a matter of first impression—the standard is whether "fairminded jurists could disagree" on this issue. *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Although the argument that *Brewer* and *Jones* naturally extend to require that a waiver of any right be knowing and consistent with a defendant's actions would warrant serious consideration on de novo review, it is the deferential AEDPA standard that governs here. Thomas cites no Supreme Court cases holding that a defendant must understand this nuance of his appellate waiver to enter a voluntary plea. And as the district court explained, the routine federal plea colloquy requirements do not mandate that the court advise a defendant that he is waiving the right to raise non-jurisdictional challenges on appeal. *See* Fed. R. Crim. P. 11(b)(1). Because Thomas has cited no Supreme Court decision related to a plea's validity that discusses a defendant's understanding of the waiver of his rights in circumstances similar to Thomas's, we cannot say that the state court unreasonably applied clearly established Supreme Court precedent in holding that Thomas's plea was not involuntary.

### III.    CONCLUSION

We **AFFIRM** the district court's holding that the state court did not unreasonably apply a rule clearly established by the Supreme Court when it decided Thomas's appellate waiver claim. But because the state court did not "clearly and expressly" apply a procedural bar to deny Thomas's Later Presented claims, we find that those claims were not procedurally defaulted and **REVERSE** and **REMAND** for a decision on their merits.